388 A.2d 1176.

WILLIAM V. LEE *et al. v.* EDWARD NIELSEN *et al.*

JULY 31, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This is an appeal from a judgment entered in the Superior Court granting the plaintiffs, two members-elect of the Charlestown Democratic Town Committee (the Committee), certain injunctive relief. The defendants, also members-elect of the Committee, are the incumbent officers.

Edward Nielsen is the Committee Chairman, and Louise M. Rousseau is the Committee Secretary.

In June 1976, sixty persons, including plaintiffs and defendants, filed declarations of candidacy for the Charlestown Democratic Town Committee. All were endorsed by the Democratic Party, ran unopposed in the September primary, and were elected to the Committee.

Town committees are required by statute to "organize biennially in the month of January in every odd year * * *." General Laws 1956 (1969 Reenactment) §17-12-9. Accordingly, defendant Nielsen scheduled an organizational meeting for the newly elected Committee at his home on January 23, 1977.[1] The notice which was sent informing the members of the meeting also stated that proxy[2] ballots could be picked up at Mr. Nielsen's home.

The organizational meeting was never held, for on January 20, 1977, plaintiffs filed the instant complaint, seeking to temporarily and permanently enjoin defendants from holding the organizational meeting as scheduled and from soliciting and using proxy ballots. The complaint alleged that plaintiffs were acting on behalf of themselves and 21 other members-elect of the Committee;[3] that the use of proxy ballots was not authorized by the rules of either the State Democratic Committee or the Charlestown Democratic Committee; that holding the meeting in Nielsen's home would have a "chilling effect" on "loyal" Democrats; and

---

[1] Under G.L. 1956 (1969 Reenactment) §17-12-8, the incumbent Committee members hold office until their successors have been duly elected, qualified, and organized.

[2] Although the notice used the word "proxy," the uncontradicted evidence at trial revealed that the ballots were, in actuality, absentee ballots.

[3] The plaintiffs neither alleged nor proved that the class was so large as to make it impracticable to bring all its members before the court and that the plaintiffs will fairly represent the interests of all. Super. R. Civ. P. 23(a). The trial justice never determined that this was a class action. The plaintiffs have neither briefed nor argued this issue; therefore, we shall treat it as being waived. *Berberian v. New England Telephone and Telegraph Co.*, 117 R.I. 629, 369 A.2d 1109 (1977).

that plaintiffs would suffer irreparable harm and would be denied rights secured by the United States and Rhode Island Constitutions. The plaintiffs also claimed that they had been unable to obtain a copy of the Committee bylaws from defendants.

A temporary restraining order was issued on January 20, 1977, and the matter was set down for hearing on the prayer for a preliminary injunction on January 28. At the commencement of the January 28 hearing, the trial justice, acting pursuant to Super. R. Civ. P. 65(a)(2), ordered the trial of the action on the merits to be advanced and consolidated with the hearing on the application. At the conclusion of the hearing the trial justice (1) enjoined defendants from holding the organization meeting at Nielsen's home; (2) ordered that the meeting be held at Charlestown Town Hall; (3) enjoined the use of proxy ballots at the organizational meeting; (4) ordered the organizational meeting to be conducted in accordance with the bylaws of the Committee and Robert's Manual and Robert's Rules of Order; and (5) ordered the organizational meeting to be held within 30 days, with notice being mailed to each member at least 10 days prior to the meeting.

At the outset we are confronted with the question of mootness. The defendants neither sought nor were granted a stay of the injunction pending appeal. Super. R. Civ. P. 62(c) and (d); Sup. Ct. R. 8. If defendants had complied with the injunction and held the organizational meeting within 30 days, the case would apparently be moot, for there would be nothing upon which our decision could act. However, at oral argument the court was informed that the organizational meeting has never been held. Thus, the resolution of this issue is, if nothing else, not moot.

The sole issue on appeal is whether the Superior Court erred in refusing to dismiss plaintiffs' complaint as presenting a nonjusticiable political dispute. As a general rule, the judiciary ought not to interfere with the internal affairs of our

political parties. *O'Brien* v. *Brown,* 409 U.S. 1, 92 S. Ct. 2718, 34 L. Ed. 2d 1, *vacated as moot* 409 U.S. 816, 93 S. Ct. 67, 34 L. Ed. 2d 72 (1972); *Winn* v. *Wooten,* 196 Ark. 737, 119 S.W. 2d 540 (1938); *Rosenberg* v. *Republican Party,* 270 S.W. 2d 171 (Ky. App. 1954); *State ex rel. Pfeifer* v. *Stoneking,* 80 Ohio App. 70, 74 N.E. 2d 759 (1946). To some extent, the autonomy which political parties and other private groups are accorded is constitutionally required by the First Amendment to the United States Constitution. *Fahey* v. *Darigan,* 405 F. Supp. 1386, 1398 (D. R.I. 1975); *see generally Developments in the Law — Judicial Control of Actions of Private Associations,* 76 Harv. L. Rev. 983 (1963). A more common explanation for judicial restraint in entering the "political thicket"[4] is the belief that a large public interest is served in allowing the political processes to function free from judicial supervision. *O'Brien* v. *Brown,* 409 U.S. at 5, 92 S. Ct. at 2720, 34 L. Ed. 2d at 6; Kester, *Constitutional Restrictions on Political Parties,* 60 Va. L. Rev. 735, 774-75 (1974). Therefore, political parties are generally recognized to have certain "inherent powers of self-government" and to be vested with wide discretion to interpret and decide their own regulations, rules, and disputes. *Bunting* v. *Board of Canvassers & Registration,* 90 R.I. 63, 66, 153 A.2d 560, 562 (1959); Comment, *Judicial Intervention in Political Party Disputes: The Political Thicket Reconsidered,* 22 U.C.L.A. L. Rev. 622, 636 (1975). *See also Como* v. *Sprague,* 46 R.I. 235, 126 A. 378 (1924).

Only where the challenged action of a political party infringes on a specific constitutional or statutory right, usually the right to vote or hold public office, will the courts intervene. *Smith* v. *Allwright,* 321 U.S. 649, 64 S. Ct. 757, 88 L. Ed. 987 (1944); *DeCesare* v. *Board of Elections,* 104 R.I. 136, 242 A.2d 421 (1968); *Bunting* v. *Board of Canvassers & Registration,* 90 R.I. 63, 153 A.2d 560; *Republican*

---

[4]*Colegrove* v. *Green,* 328 U.S. 549, 556, 66 S. Ct. 1198, 1201, 90 L. Ed. 1432, 1436 (1946).

*Town Committee* v. *Knowles,* 60 R.I. 339, 198 A. 780 (1938); *Como* v. *Sprague,* 46 R.I. 235, 126 A. 378; *Carney* v. *Pilch,* 30 Conn. Sup. 34, 296 A.2d 687 (1972). Accordingly, in determining whether a particular dispute is a nonjusticiable political matter, the focus has been on whether the dispute is an "integral part of the electoral process" or merely involves the internal affairs of the political party. *Gallant* v. *LaFrance,* 101 R.I. 299, 305-06, 222 A.2d 567, 570 (1966); *Storer* v. *Brown,* 415 U.S. 724, 735, 94 S. Ct. 1274, 1281, 39 L. Ed. 2d 714, 726 (1974); *O'Brien* v. *Brown,* 409 U.S. at 4, 92 S. Ct. at 2720, 34 L. Ed. 2d at 6; *Fahey* v. *Darigan,* 405 F. Supp. at 1398; *Rosenberg* v. *Republican Party,* 270 S.W. 2d at 172; Comment, *Judicial Intervention in Political Party Disputes: The Political Thicket Reconsidered,* 22 U.C.L.A. L. Rev. 622, 627 (1975).

Application of the above principles to the case at bar is not difficult. The plaintiffs have failed to specify a single constitutional or statutory right which was jeopardized in any way by the organizational meeting as planned by defendants. The defendants are not attempting to deprive plaintiffs of any public or elective office. To the contrary, defendants admit that plaintiffs are lawfully elected members of the Committee and would be welcome at the organizational meeting. Nothing in the Constitution or laws of Rhode Island prohibits the Committee from holding its organizational meeting in a private residence or voting for the Committee's officers by way of absentee ballots. The "management of the affairs" of the local political parties is vested in the town committees, subject to all state committee rules. Section 17-12-10. While it is true that the State Democratic Committee Bylaws require that party meetings be open to all members, and be held in places accessible to members, and large enough to accommodate all interested parties, they do not prohibit holding such meetings in private dwellings. The uncontradicted testimony of defendant Nielsen was that his home is large enough to accommodate a meeting of 60 people and would be "open to everybody."

The bylaws of the town committee and of the state committee make no reference whatsoever to the use of absentee ballots. Such silence is understandable because party rules are rarely explicit enough to resolve all parliamentary questions. *See* Vining, *Delegate Selection Reform and the Extenstion of Law into Politics,* 60 V. L. Rev. 1389, 1396 (1974). In the absence of a clear statutory provision, the resolution of these issues is best left to the Committee itself. *O'Brien* v. *Brown,* 409 U.S. 1, 92 S. Ct. 2718, 34 L. Ed. 2d 1. The same is true with respect to the trial justice's ruling that matters arising at the meeting not specifically covered by the local bylaws shall be governed by Robert's Manual and Robert's Rules of Order. While the state committee rules do follow the above parliamentary sources in proceedings before the *state* committee, nothing in the state or local rules requires that the local committees do likewise.

In short, nothing of which the plaintiffs complain is, in any realistic sense, an "integral part of the electoral process." *Gallant* v. *LaFrance,* 101 R.. at 305-06, 222 A.2d at 570. Accordingly, we hold that the trial justice impermissibly interfered with the internal affairs of the Committee when he specified the time, place, and manner of the Committee's organizational meeting and when he took upon himself to resolve potential parliamentary and procedural disputes.

The defendants' appeal is sustained, the judgment appealed from is reversed, and the case is remanded with direction to enter judgment for the defendants.

*David J. Kehoe,* for plaintiffs.

*Aram K. Berberian,* for defendants.